# WICKHAM & BURTON COAL CO. v. MINNESOTA COAL CO.

(Circuit Court of Appeals, Seventh Circuit. May 20, 1925. Rehearing Denied Oct. 1, 1925.)

No. 3470.

1. **Contracts** ⟜309(1)—**That contract cannot be performed without a great and unlooked-for expense is not such impossibility as will excuse.**

That a contract cannot be performed without a great and unlooked-for expense does not constitute such impossibility as will excuse.

2. **Sales** ⟜182(1)—**Whether defendant had been prevented by third person from performing its contract with plaintiff, within meaning of contract, held for jury.**

Where defendant coal company's contract, obligating it to ship to plaintiff every month half of the output of a coal mine of H. Co., excused defendant from performing if performance was prevented by third person, and gave defendant option to procure coal from other mines, the fact that, when the H. Co. refused to deliver coal to defendant, because of higher prices obtained elsewhere, defendant made no effort to get the coal from the H. Co., or its consignees, or on the open market, at a higher price, *held* to make it question for jury to determine whether performance had been prevented by H. Co., and whether it was duly diligent.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Minnesota Coal Company against the Wickham & Burton Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Grover C. Niemeyer, of Chicago, Ill., for plaintiff in error.

Roland D. Whitman, of Chicago, Ill., for defendant in error.

Before ALSCHULER and ANDERSON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge. Plaintiff (defendant in error) brought suit and recovered against defendant (plaintiff in error) for damages because of breach of contract to deliver coal between May 8, 1920, and March, 1921. This contract, dated May 8, 1920, provided that defendant would bill to plaintiff 55 cars of coal per month begin-

ning with May, 1920, f. o. b. the mine of the Harrisburg Fuel Company at Dorrisville, Ill., at $3.25 per ton, subject to revision in case of change in wage scale, and contained a provision that, "if the seller be prevented by the act of any third person from making shipment, then * * * the seller will be excused from nondelivery during the continuance of such * * * interference." The quantity of coal sold was one-half the estimated output of the mine, for all of which the defendant had previously contracted. Defendant had the option to procure the coal from other mines, but was by the contract expressly excused from being compelled to do so. The mine was operated and produced coal during all of the period, and during the month of May the Fuel Company produced and shipped 29 cars, from which plaintiff received 5 cars upon its orders.

In June the Fuel Company produced and sold 36 cars. Of these defendant received 29 cars, and delivered to plaintiff 3 cars. Defendant ceased delivering to plaintiff June 21, 1920, upon the ground that from and after that date the Fuel Company refused to deliver any more coal to defendant, but sold its output elsewhere at a higher price, thus bringing about a situation contemplated by the provision of the contract, quoted supra, where defendant was excused from further performance by the prevention of a third person. Though at this time the plaintiff had not received its pro rata share of the coal delivered by the Fuel Company to the defendant, the latter contended, probably rightfully, that under its contract it was not compelled to make complete delivery before the end of each month, and that therefore, as June had not then wholly expired, it was not in default at the time the alleged "prevention" began; but the evidence is clear that, had defendant delivered to plaintiff all coal mined after June 21st (7 cars) to apply upon the latter's purchase for June, the plaintiff would not have received the amount contracted to be delivered during June, nor one-half the output of the mine during that period. Thus the evidence indicated, and the jury evidently believed, that defendant had broken its contract with plaintiff and was in default at the end of June. In other words, defendant had diverted coal that should have been shipped to plaintiff.

About June 21st defendant's representative saw the president of the Fuel Company. The latter admitted diverting coal from defendant, and said he had contracted to sell the mine's output elsewhere at a higher price and would deliver it accordingly. The exact price was not mentioned, and defendant did not offer to meet such price, or endeavor to procure coal from the mine company at any price other than its original contract provided, or to buy or otherwise procure the surrender of the coal from the Consumers' Company, to whom it was being diverted by the Fuel Company. The court charged the jury that if it believed from the evidence that defendant was prevented from fulfilling its contract with plaintiff through no fault of its own, by the acts of third persons, the verdict should be for the defendant.

The only question submitted to this court arises upon the refusal of the court below, at the close of all the evidence, to charge the jury "that, under the pleadings and evidence in this case, the plaintiff cannot recover any damages for failure of defendant to deliver to plaintiff any coal from and after the breach of the contract between Harrisburg Fuel Company and defendant by said Harrisburg Fuel Company, and the failure of said Harrisburg Fuel Company to deliver coal under said contract from and after June 22, 1920." Proper exception was preserved to such refusal. By this motion, the court was requested to hold as a matter of law that defendant had, by the acts of third persons, been prevented from performing its contract with plaintiff from and after June 22, 1920. Instead of doing so, the court submitted such question to the jury as a question of fact.

This action of the court was proper, for the jury had a right under this evidence to find that defendant had not been reasonably prudent or diligent in endeavoring to procure the coal. It was plainly in default because of its own wrongful diversion of coal during June; it made no effort to persuade the persons who were getting the coal wrongfully diverted by the mine company to surrender the same; it did not ascertain the price which the mine company was obtaining; it did not make any offer of any other price; it did not try to purchase Harrisburg coal from the persons who were getting it by virtue of the wrongful diversion or elsewhere upon the open market; it made no showing that it might not have done any or all of these things. Its position comes dangerously near being that, merely because it would have been more expensive to perform its contract than it had contemplated, it was, as a matter of law, excused from all performance. Performance of this contract was not made conditional upon defendant's ability to buy the coal from the Fuel Company

at any certain price. The defendant, in fact, advised plaintiff that it had procured the output of the mine, and there is nothing in the record that would warrant the assumption that plaintiff understood that if the defendant had difficulty in obtaining at a satisfactory price the coal, which it said it had secured, the defendant might refuse to pay a higher price and treat the situation as the act of a third person beyond its control. "But it [the inference that the parties contracted on the basis of the continued existence of the particular thing] ought not to be said to be apparent, unless the character of the contract is such as to disclose clearly such intention, and there is danger that courts, in their desire to relieve contracting parties in hard cases, may extend it to contracts where the implication is not apparent." Nicol v. Fitch, 115 Mich. 15, 72 N. W. 988, 69 Am. St. Rep. 542.

[1,2] It was a fair question for the jury whether the defendant was unable to perform because it made no effort to get the coal from the Fuel Company, or its consignees, or upon the open market at a higher price, and whether it was duly diligent in trying to perform. "Obviously the fact that the contract cannot be performed without a great and unlooked for expense does not constitute such impossibility as will excuse." 2 Mechem on Sales, § 1105. In a case somewhat analogous in principle to the present one (Haff v. Pilling [C. C.] 134 F. 294), where the contract of purchase called for the delivery of "10,500 gross tons of 'Sonman Shaft bituminous steam coal,'" the defendant contended that it was impossible to procure cars at a shaft. The court said: "It does not follow, however, that, because they [Pilling et al.] took the precaution to make these contracts [with Sonman Shaft Coal Company] for this coal before they sold it, they would be excused from further effort to secure cars or to procure coal for delivery, when and if, as a matter of fact, they could have, by reasonable expenditure of money, purchased Sonman Shaft coal in the open market, or secured the cars to ship the coal for which they had contracted. * * * There was nothing to show that there was any effort on the part of the defendants to comply with their contract, other than the fact that they made the contracts with other concerns to supply the coal for which they contracted with the plaintiff, and went several times to see the railroad company about cars, and had a man at the mines to keep tab on the cars shipped from there on their contract with the plaintiff. They made no effort to purchase coal in the open market, and made no effort whatever in any other direction to secure cars in addition to those that were apportioned by the railroad company to the Sonman Shaft mines." See, also, Kitzinger and Sanborn, 70 Ill. 146; Walker v. Tucker, 70 Ill. 527; Summers v. Hibbard, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 872; American Bridge Co. v. Glenmore (Ky.) 107 S. W. 279; Tennants v. Wilson & Co. L. R. [1917] App. Cas. p. 495; Nicol v. Fitch, 115 Mich. 15, 72 N. W. 988, 69 Am. St. Rep. 52.

Whether there was such action upon the part of the defendant as would prove its contention that its performance had been physically or legally prevented by the Fuel Company, was plainly a question of fact for the jury under the charge of the court. The motion was properly overruled, the jury correctly charged; and the judgment, with costs against plaintiff in error, must be and it is

Affirmed.